**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **Delta Phones, Inc., et al.,** | ) | No. 04 B 00823 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | The Honorable John H. Squires, presiding |
| | ) | |
| | ) | Objection Deadline: July 27, 2004 |
| | ) | |
| | ) | Hearing Date: August 5, 2004 at 9:30 a.m. |

## NOTICE OF APPLICATION

TO:   SEE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on **July 7, 2004,** we caused to be filed the attached First and Final Application of Kroll, Inc. as Consulting Experts To The Trustee For Compensation and Reimbursement of Expenses.

Objection, if any, to the Application must be (a) filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Room 710, Chicago, Illinois 60604 on or before **July 27, 2004 at 4:00 p.m. (Central Time)** (the "Objection Deadline"); and (b) be served so as to be received by undersigned counsel to Kroll, Inc.

A HEARING ON THE APPLICATION HAS BEEN SCHEDULED FOR **AUGUST 5, 2004 at 9:30 a.m.,** BEFORE THE HONORABLE JOHN H. SQUIRES, UNITED STATES BANKRUPTCY JUDGE, COURTROOM 680, UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, 219 SOUTH DEARBORN STREET, CHICAGO, ILLINOIS 60604.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF REQUESTED BY THE APPLICATION WITHOUT FURTHER NOTICE.

Dated:   July 7, 2004
         Chicago, Illinois

KROLL, INC.

By: _____

One if Its Attorneys

Susan N.K. Gummow
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois  60603
312-855-1010

918661.1

## SERVICE LIST
### Delta Phones, Inc., *et al.*
### Case No. 00823

Stephen G. Wolfe
United States Trustee
227 West Monroe St., Suite 3350
Chicago, IL  60606
Tel.:   312-886-5785
Fax.:  312-886-5794

Michael J. Davis
Koffin Springer Scheinbaum & Davis
611 S. Addison Rd.
Addison, IL  60101
Tel.:   630-530-9999
Fax.:  630-530-0098

Kent A. Gaertner, P. C.
Mohr & Gaertner
1300 Iroquois Dr., Ste. 230
Naperville, IL  60563
Tel.:   630-548-4600
Fax.:  630-548-5922

Richard M. Fogel
Shaw Gussis Fishman, et al.
321 N. Clark St., Suite 800
Chicago, IL  60610
Tel.:   312-541-0151
Fax.:  312-980-3888

Sajida Mahdi
Mayer Brown Rowe Maw L.L.P.
190 S. LaSalle St.
Chicago, IL  60603
Tel.:   312-782-0600
Fax.:  312-701-7711

EZ Talk Communications, LLC
1245 E. Diehl Rd.
Suite 300
Naperville, IL  60563
Fax.:   630-955-0059

Delta Phones, Inc.
1245 E. Diehl Rd.
Suite 300
Naperville, IL  60563
Fax.:   630-955-0059

Craig A. Knot
SBC Legal Department
225 W. Randolph St.
25th Floor
Chicago, IL  60606
Tel.:   312-727-6433
Fax.:  312-845-8976

Aaron L. Hammer
Mayer Brown Rowe Maw L.L.P.
190 S. LaSalle St.
Chicago, IL  60603
Tel.:   312-782-0600
Fax.:  312-701-7711

Daryl S. Laddin
Arnall Golden Gregory L.L.P.
2800 One Atlantic Center
1201 W. Peachtree St.
Atlanta, GA  30309-3450
Tel.:   404-873-8120
Fax.:  404-873-8121

Timothy W. Brink
Timothy S. McFadden
Lord Bissell & Brook
115 S. LaSalle St.
Chicago, IL 60603
Tel.: 312-443-0700
Fax.: 312-443-0336

Jay W. Hurst
Office of the Texas Attorney General
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, TX 78711-2548
Tel.: 512-475-4861
Fax.: 512-482-8341

Eric Gould
2500 Tanglewilde, Suite 222
Houston, TX 77063
Tel.: 713-266-3311
Fax.: 281-596-4449

Paul M. Rosenblatt
Kilpatrick Stockton L.L.P.
1100 Peachtree St., N.E. , Ste. 2800
Atlanta, GA 30309-4350
Tel.: 404-815-6121
Fax.: 404-541-3373

D. Patrick Mullarkey
Internal Revenue Service
P.O. Box 55
Ben Franklin Station
Washington, DC 20044
Tel.: 202-378-1120
Fax.; 202-514-5238

Bradley H. Foreman
Law Offices of Bradley H. Foreman
6914 W. North Ave.
Chicago, IL 60607
Tel.: 773-627-4800
Fax.: 773-622-4873

Steven A. Ginther
Missouri Dept. of Revenue
Bankrupty Unit
P.O. Box 475
Jefferson City, MO 65105-0475
Tel.: 573-751-5531
Fax. 573-751-7232:

Neil Hershkowitz
Riverside Contracting L.L.C.
P.O. Box 626
Planetarium Station
New York, NY 10024-0540
Tel.: 888-501-0990
Fax.: 212-501-7088

James P. Smith
Arnall Golden Gregory L.L.P.
201 Second St.
Suite 1000
Macon, GA 31201
Tel.: 478-741-8267
Fax.: 478-743-0239

Wright Lindsay & Jennings L.L.P.
200 W. Capitol Ave.
Suite 2300
Little Rock, AR 72201-3699
Tel.: 501-371-0808
Fax.: 501-376-9442

Scott N. Schreiber
Much, Shelist Freed, et al.
191 N. Wacker Dr.
Suite 1800
Chicago, IL 60606
Tel.:   312-521-2485
Fax.:   312-514-5238

Rex D. Rainach
Rex D. Rainach, P.C.
3622 Government St.
Baton Rouge, LA 70806
Tel.:   225-343-0643
Fax.:   225-343-0646
rainach@msm.com

Mark W. Comley
Newman, Comley & Ruth, P.C.
P.O. Box 537
Jefferson City, MO 65102-0537
Tel.:   573-634-2266
Fax.:   573-636-3306

Tennessee Department of Revenue
c/o TN Attorney General's Office
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-0207
Tel.:   615-532-2504
Fax.:   615-741-3334

James Newbold
Office of the Attorney General
Revenue Litigation Division
100 W. Randolph St.
Chicago, IL 60601
Tel.:   312-814-4557
Fax.:   312-814-2549

D. Scott Barash
Universal Service Administrative Co.
2000 L. St., N.W., Suite 200
Washington, DC 20036
Tel.:   202-776-0200
Fax.:   202-776-0080

T. Scott Leo
John E. Sebastian
Leo & Weber, P.C.
1 North LaSalle St., Ste. 3600
Chicago, IL 60602
Tel.:   312-857-0910
Fax.:   312-857-1240

John Dillman
Linebarger Goggan Blair & Sampson L.L.P.
P.O. Box 3064
Houston, TX 77253-3064
Tel.:   713-844-3478
Fax.:   713-844-3503

Alschuler Crossman Stein & Kahan L.L.P.
ATTN : Larry Toms
The Water Giarden
1620 26th St.
Fourth Floor, North Tower
Santa Monica, CA 90404-4060
Tel.:   310-907-1000
Fax.:   310-907-2000

John K. Ford
100 Century Park Drive
Monroe, LA 71203
Fax.:   318-388-9072

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:                                      )    Chapter 7
                                            )
**Delta Phones, Inc., et al.,**              )    No. 04 B 00823
                                            )    (Jointly Administered)
                                            )
                     Debtor.                )    Honorable John H. Squires
                                            )
                                            )    Objection Deadline:  July 27, 2004
                                            )
                                            )    Hearing Date:  August 5, 2004 at 9:30 a.m.

### FIRST AND FINAL APPLICATION OF KROLL INC.
### AS CONSULTING EXPERTS TO THE TRUSTEE FOR
### COMPENSATION AND REIMBURSEMENT OF EXPENSES

Kroll Inc. ("Kroll" or the "Applicant"), consulting experts to the Trustee, by and

through the undersigned counsel, presents its first and final application for compensation and

reimbursement of expenses (the "Application") incurred during the time period beginning

March 17, 2004 and ending June 25, 2004 (the "Time Period").  By this Application, the

Applicant seeks final allowance of $300,636.50 as compensation for services rendered and

$48,189.04 as necessary out-of-pocket expenses.  In support of this Application, the

Applicant respectfully represents as follows:

### VENUE AND JURISDICTION

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1334.  This Application constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and

(B).

Venue of the Debtor's Chapter 7 case and this Application in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief requested herein are sections 328, 330 and 331 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of the Bankruptcy Procedure.

## Background

1.     On January 8, 2004 (the "Petition Date"), Delta Phones, Inc. ("Delta Phones") and EZ Talk Communications, LLC ("EZ Talk") filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.

2.     Prior to the Petition Date, the Debtors were in the business of purchasing and reselling telephone services to individual customers.

3.     On January 26, 2004, Bellsouth Telecommunications, Inc., ("Bellsouth") filed a Motion for (I) Appointment of a Chapter 11 Trustee or Conversion to Chapter 7, and (II) Adequate Assurance Pursuant to Section 366 For Utility Services (the "Bellsouth Motion") in EZ Talk's Chapter 11 case (the "EZ Talk Case") and Delta Phones' Chapter 11 case (the "Delta Phones Case"). In its motion, Bellsouth alleged that EZ Talk's principals had engaged in schemes to defraud various parties, including Bellsouth.

4.     Thereafter, on January 30, 2004 Vertex Broadband Corp. ("Vertex") filed its Motion to Join in the Relief Requested in the Bellsouth Motion (the "Vertex Motion") in the EZ Talk and Delta Phones Cases. In addition to asking the Court for leave to join in the Bellsouth Motion, Vertex alleged that Fallean Mintz, a former employee of Vertex, wrongfully diverted assets belonging to Vertex from Vertex to EZ Talk, Delta Phones and M&T Capital, an entity owned by Mintz and Richard Tolan.

5.     Three days later, on February 2, 2004, SBC Communications, Inc. ("SBC"), Southwestern Bell Telephone, L.P., and certain affiliates (collectively the "SBC Parties")

filed their joinder (the "SBC Motion" and, together with the Bellsouth Motion and the Vertex

Motion, the Chapter 11 Trustee Motions") to the Bellsouth Motion in the EZ talk and Delta

Phones cases. In its motion, the SBC Parties alleged that Mintz and Tolan had engaged in

fraudulent conduct in connection with their operation of EZ Talk and Delta Phones. After an

initial hearing, the Court set the Chapter 11 Trustee Motions for trial on February 19, 2004.

   6.  On February 17, 2004, the U.S. Trustee filed motions in the Debtors' cases to

limit the powers of the debtors in possession, and on February 19, 2004, the Court entered

orders limiting the powers of the Debtors to disburse funds or transfer property of the estate.

   7.  On February 19, 2004, the Court entered an order appointing a Chapter 11

trustee, and on February 25, 2004, this Court entered an order approving the appointment of

Ronald R. Peterson as the Chapter 11 trustee.

   8.  On March 4, 2004, the Court entered an order of joint administration, pursuant

to Bankruptcy Rule 1015(b), providing for the joint administration of the Debtors' cases. On

that same day, the Court entered an order converting the Debtors' cases to proceedings under

Chapter 7 of the Bankruptcy Code, and the Trustee remained trustee herein.

   9.  On May 6, 2004, the Court entered an Order Authorizing Trustee to Enter Into

a Certain Funding Agreement with the Operating Telephone Company Subsidiaries of SBC

Communications Inc. and Verizon Communications Inc., and Bellsouth Telecommunications,

Inc. (the "Funding Order"). A copy of the Funding Order is attached hereto as Exhibit A.

The Funding Agreement (attached as Exhibit A to the Funding Order) specifically provides

that SBC Communications Inc., Verizon Communications Inc. and Bellsouth

Telecommunications, Inc., (collectively the "Funding Parties") shall make available to the

Debtor's estate a $75,000 retainer for a forensic accountant, Kroll. Further, the Funding

Agreement provides that $350,000 shall be paid to Kroll for a forensic accounting and fraud examination of the Debtors, their principals and related entities. *Funding Order,* Ex. A (Funding Agreement) p. 2.

10. On May 6, 2004, the Court entered an Order Pursuant to 11 U.S.C. § 327 (a) and Fed.R.Bankr.P. 2014(a), 2016 and 5002, Authorizing Trustee to Employ and Retain Kroll Inc. as Consulting Experts. ("Retention Order"). A copy of the Retention Order is attached hereto as Exhibit B.

## RELIEF REQUESTED

11. This Application includes the time period beginning March 17, 2004 through June 25, 2004.

12. As further detailed in the invoice attached hereto as Exhibit C, Applicant requests compensation for the professionals who have provided services to the Trustee during the Time Period. A summary of the professionals who have provided services during the Time Period is summarized as follows:

| ACCOUNTANT | HOURS | RATE | AMOUNT |
|---|---|---|---|
| M. Pace | 15.90 | $425.00 | $ 6,757.50 |
| M. Fellner | 156.90 | $375.00 | $ 58,837.50 |
| A. Alvizu | 178.90 | $295.00 | $ 52,775.50 |
| T. Sterner | 100.60 | $295.00 | $ 29,677.00 |
| B. Friedman | 77.5 | $275.00 | $ 21,312.50 |
| L. Butterfield | .80 | $245.00 | $ 196.00 |
| D. Walker | 161.00 | $225.00 | $ 36,225.00 |
| D. Copp | 208.10 | $225.00 | $ 46,822.50 |
| M. McDonald | .50 | $220.00 | $ 110.00 |
| M. Towers | 1.50 | $220.00 | $ 330.00 |
| D. Wetherell | 2.00 | $200.00 | $ 400.00 |
| P. Donato | 152.60 | $130.00 | $ 19,838.00 |
| T. Horn | 2.00 | $110.00 | $ 220.00 |
| P. Martin | 168.70 | $ 50.00 | $ 8,435.00 |

916637.1

| | | | |
|---|---|---|---|
| Ontrack | 68.00 | $275.00 | $ 18,700.00 |
| | | | |
| **TOTAL** | **1,295.00** | | **$300,636.50** |

## SUMMARY OF SERVICES RENDERED AND EXPENSES INCURRED

13.     During the Time Period, Applicant incurred a total of 1,295 hours investigating potential fraudulent conveyances or preference payments by the Debtors and identifying potentially recoverable assets held by the principals of the Debtors, related persons and entities.  Applicant took control of the Debtors' facility in Naperville, preserved and shipped to its computer forensic lab all useful available electronic media, including the accounting record, establishing chain of custody and preserving the evidence for further analysis and use in any legal proceeding.

14.     Applicant verified the revenues and traced the sources of revenue of the Debtors, determined if there were viable accounts receivable and traced the use of case revenue.  Applicant also developed evidence to support a potential alter ego claim.

15.     Applicant reported regularly to the Trustee and the Creditors' Committee.  On May 25, 2004, Applicant provided a final report of its findings to the Trustee and the Creditors' Committee.  The information provided to the Trustee and the Creditor's Committee included previously unknown information regarding the backgrounds of the owners of the Debtors and related parties as well as the existence of an unknown shareholder of one of the Debtor entities.  Applicant also provided previously unknown information regarding the secret purchase of two other CLEC's, potentially recoverable preference payments and fraudulent conveyances, including sizeable payments to insiders, relatives, shareholders, and related parties and the apparent misuse of corporate assets and cash for the benefit of the principals.

916637.1

16.  During the Time Period, Applicant expended the sum of $48,189.04 for reasonable and necessary expenses in connection with aforementioned forensic accounting services provided as consulting expert to the Trustee.

17.  The following is a summary of the expenses incurred during the Time Period:

| Out of Pocket Disbursements | Amount |
|---|---|
| T&E - Ground Transportation | $ 9,742,47 |
| Forensic Analysis of Hard Drives | $ 6,650.00 |
| Database Charges | $ 3,616.44 |
| T&E - Hotel Charges | $ 4,043.99 |
| T&E - Meals | $ 2,539.20 |
| T&E - Air Transportation | $ 3,202.34 |
| Ontrack Equipment Supplies | $ 2,165.11 |
| Public Records Expense | $ 2,958.60 |
| Postage & Courier | $   603.24 |
| T&E - Mileage Reimbursement | $   327.32 |
| Storage Materials | $   294.97 |
| Telephone & Fax | $    19.90 |
| | |
| **Total Out of Pocket Disbursements** | **$36,163.58** |

## SUMMARY

18.  Based upon the total number of hours spent in connection with Applicant's representation of the Trustee, the gross amount of fees incurred during the Time Period is $300,636.50.

19.  As consulting Experts to the Trustee, Applicant incurred a total of $48,189.04 in out-of-pocket expenses during the Time Period.  As per the agreement with the Trustee, this amount includes an administrative service cost equal to 7% of the amount charged for professional fees to cover costs which are not directly billable such as telecommunications, reproduction and other administrative costs.  As an accommodation however, that amount was reduced to 4%.

-6-

916637.1

20.    Applicant requests authority to apply the $75,000 retainer currently held on account against the fees and expenses allowed herein, leaving a balance due and owing to Applicant in the amount of $273,825.54.

## LIMITED NOTICE

21.    Notice of the application has been limited to (i) the Debtors; (ii) the Office of the United States Trustee; (iii) the Chapter 7 Trustee; and (iv) those parties requesting notice in these cases. The Applicant submits that given the nature of the relief requested herein, no other or further notice is necessary.

22.    Pursuant to Bankruptcy Rule 2002(a)(6), applicant is required to give at least twenty (20) days notice of the hearing on this application by mail to all creditors, unless the Court for cause directs that notice need not be sent. Applicant has given twenty (20) days notice of the hearing on this application, however, the Applicant submits that cause exists to limit notice of the hearing on this application as describe in paragraph 21 above.

23.    Applicant has diligently represented the Trustee as its consulting expert in the Chapter 7 case. Based upon the circumstances, the fair value of the professional services rendered by the Applicant to the Trustee, the skill required, the nature of the services rendered and the results obtained, the fees charged by Applicant for its services in the Chapter 7 case are reasonable.

24.    All services for which Applicant requests compensation were performed for and on behalf of the Trustee, and not on behalf of any other entity.

WHEREFORE, Kroll Inc. respectfully requests that the Court enter the Proposed Order:

(i)    granting Applicant final compensation for services rendered as consulting expert to the Trustee in the amount of $300,636,50;

-7-

916637.1

(ii)    granting Applicant final allowance for reimbursement of expenses
        incurred on behalf of the Trustee in the amount of $48,189.04;

(iii)   authorizing Applicant to apply the $75,000 Retainer to the balance of the
        fees and expenses finally awarded to Kroll in the Chapter 7 case;

(iv)    authorizing and directing the Chapter 7 Trustee to remit the balance fees
        and expenses awarded to Applicant in the amount of $273,825.54; and

(v)     granting such other and further relief deemed appropriate under the
        circumstances.

                        Kroll, Inc.

            By:    _____
                        One of Its Attorneys

Susan N.K. Gummow
ARDC # 6258070
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603
312-855-1010

-8-

916637.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| **Delta Phones, Inc., et al.,** | ) | No. 04 B 00823 |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | The Honorable John H. Squires, presiding |
| | ) | |

At Chicago, Illinois
May ⟨6⟩, 2004

**ORDER AUTHORIZING TRUSTEE TO ENTER INTO A CERTAIN**
**FUNDING AGREEMENT WITH THE OPERATING TELEPHONE COMPANY SUBSIDIARIES**
**OF SBC COMMUNICATIONS INC. AND VERIZON**
**COMMUNICATIONS INC., AND BELLSOUTH TELECOMMUNICATIONS, INC.**

Upon the Trustee's Motion for an Order authorizing the Trustee to enter into a certain funding agreement with the operating telephone company subsidiaries of SBC Communications Inc. (as listed on the signature page of the Funding Agreement (defined below) and collectively designated hereinafter, "SBC")[1] and Verizon Communications Inc. ("VZ"), and BellSouth Telecommunications, Inc. ("BST" and, together with SBC and VZ, the "Funding Parties"), pursuant to 11 U.S.C. §§ 105, 364, 503 and 507, seeking the relief described in paragraphs (i) through (vi) below (the "Relief"):

(i)     authorizing the Trustee to obtain funding in the form of a funding commitment (the "Funding Agreement"), substantially in the form of the agreement annexed hereto as Exhibit A, by and between the Trustee and the Funding Parties advancing the Debtors' Estate up to $500,000.00 (the "Initial Funding Commitment");

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion related hereto.


**EXHIBIT**
A

the Trustee will use the funds to administer the Estate and investigate the Fraudulently

Transferred Assets, as more particularly set forth in the Funding Agreement;

(ii)    granting to the Funding Parties a super priority claim in an amount

equal to the Initial Funding Commitment plus any other amounts due to the Funding

Parties under the Funding Agreement, pursuant to section 364(c)(1), over all other

Chapter 7 or Chapter 11 claims against the Estates pursuant to sections 726(a)(1) and

507(a)(1) of the Bankruptcy Code (the "Funding Claim"), which shall be reimbursed by

the Estates as set forth in the Funding Agreement;

(iii)    authorizing the Trustee to permit the Funding Parties to pursue any

alter ego or related claims against the Debtors' principals or related companies (the

"Alter Ego Claims") notwithstanding anything in section 362(a) of the Bankruptcy Code

or otherwise to the contrary, as more particularly set forth in the Funding Agreement,

including those claims currently pending by SBC's affiliate Southwestern Bell, in the

United States District Court for the Southern District of Texas, as well as to retain any

proceeds recovered on account of the Alter Ego Claims subject to the Funding Parties

agreement to turnover 10% of the net proceeds of such claims to the Trustee as set forth

in the Funding Agreement;[2]

(iv)    authorizing the Trustee to waive and release (the "Release") any

and all Known Claims (as defined herein) it may have on its own behalf or on behalf of

the Estates against the Funding Parties or their affiliates (the "Releasees"). "Known

Claims" shall include, without limitation, any and all claims at law, in equity or otherwise

---

[2]    The Trustee and any other parties shall not be restricted by this Order from pursuing separate or other alter
ego claims against the Debtors or their principals within their sole and exclusive discretion and nothing herein or in
the Funding Agreement shall otherwise limit the pursuit of such claims.

2

which have been asserted or threatened against the Releasees by the Debtors or their representatives (and any claims related to such claims), together with any other claims in law, in equity or otherwise which have been investigated by the Trustee as of the date hereof; such asserted, threatened or investigated claims having included, without limitation, claims for or related to overbilling, billing disputes, refunds, charges, charge backs, credits, reciprocal compensation, interstate and intrastate access fees, call origination and termination fees, form of billings, billing practices, billing errors, setoffs, offsets, tariffs, interconnection agreements, provision or non-provision of service, breach of contract, anticompetitive business practices, tortious interference with business relationships, and under Chapter 5 of the U.S. Bankruptcy Code (including, but not limited to, preference claims); and

(v)    authorizing the Trustee to (1) enter into a common interest agreement with the Funding Parties for the purpose of, including but not limited to, sharing the Estates' books and records and any information obtained or otherwise generated by Kroll in connection with the forensic examination with the Funding Parties and (2) waive any applicable privileges and enable the Funding Parties to take discovery of the Debtors' professionals, as more particularly set forth in the Funding Agreement.

It further appearing, that the Trustee may have insufficient funds to meet expenses necessary for a proper investigation of the Estates' assets and property; that the Trustee's ability to increase the value of the Estates by locating and recovering the Fraudulently Transferred Property depends upon obtaining the Relief; that the financing arrangements contemplated by the Funding Agreement are the product of negotiations involving interested parties in the Debtors' bankruptcy cases, and are being entered into by the Funding Parties and the Trustee in good

3

faith, as the term "good faith" is used in section 364(e) of the Bankruptcy Code; that the Court

has jurisdiction over the subject matter of this core proceeding and the parties thereto; that entry

of this Order is in the best interests of the Debtors' Estates and their creditors; that proper notice

of the Motion was given; that the Court is fully advised in the premises; and that good and

sufficient cause exists therefor,

IT IS HEREBY ORDERED that the Motion is granted.

IT IS FURTHER ORDERED that the Trustee is hereby authorized and directed to

(a) execute and deliver the Funding Agreement and all other documents necessary, including,

without limitation, modifications and amendments to the Funding Agreement, (b) effect all

transactions and take any actions provided for in or contemplated by the Funding Agreement or

deemed necessary or desirable by the Funding Parties to effectuate the terms and conditions of

the Funding Agreement, and (c) comply with all provisions of the Funding Agreement, including

without limitation, the reimbursement of the Funding Claim in accordance with the terms of the

Funding Agreement.

IT IS FURTHER ORDERED that, consistent with the finding of fact set forth

above concerning section 364(e), the Funding Parties shall be entitled to rely on section 364(e) of

the Bankruptcy Code in connection with the matters contemplated by the Funding Agreement

and this order, and any funding supplied by the Funding Parties pursuant to the Funding

Agreement shall receive the benefits of section 364(e).

IT IS FURTHER ORDERED that the Funding Claim shall be entitled to and

hereby is irrevocably granted super priority status, pursuant to section 364(c)(1), over all other

Chapter 7 or Chapter 11 claims against the Estates pursuant to section 726(a)(1) and 507(a)(1),

4

and that the Funding Claim shall be reimbursed by the Estates as set forth in the Funding Agreement.

IT IS FURTHER ORDERED that the Trustee be and hereby is authorized to permit the Funding Parties to pursue the Alter Ego Claims, notwithstanding anything in section 362(a) of the Bankruptcy Code or otherwise to the contrary, as more particularly set forth in the Funding Agreement; as well as to retain any proceeds recovered on account of the Alter Ego Claims subject to the Funding Parties agreement to turnover 10% of the net proceeds of such claims to the Trustee as set forth in the Funding Agreement.

IT IS FURTHER ORDERED that the Release is hereby approved in its entirety without further action necessary by this Court, the Trustee or the Releasees.

IT IS FURTHER ORDERED that the Trustee be and hereby is authorized (1) to enter into a common interest agreement with the Funding Parties for the purpose of sharing the Estates' books and records with the Funding Parties and (2) to waive any applicable privileges to enable the Funding Parties to take discovery of the Debtors' professionals, as more particularly set forth in the Funding Agreement.

IT IS FURTHER ORDERED that this Court retains and reserves jurisdiction to enforce all provisions of this Order.

5/6/

MAY - 6 2004

_____
UNITED STATES BANKRUPTCY JUDGE

5

**EXHIBIT A**

**FUNDING AGREEMENT**

## ESTATE FUNDING AGREEMENT

| | |
|---|---|
| **Borrowers** | Estates of Delta Phones, Inc. and EZ Talk Communications, LLC (the "Debtors"). |
| **Funding Parties** | The operating telephone company subsidiaries of SBC Communications Inc. (as listed on the signature page below and collectively designated hereinafter as "SBC"), the operating telephone company subsidiaries of Verizon Communications Inc. ("VZ") and BellSouth Telecommunications, Inc. ("BST" and together with SBC and VZ, the "Funding Parties")). |
| **Initial Funding Commitment** | SBC, BST and VZ shall fund 70%, 25% and 5%, respectively, of the Initial Funding Commitment.  Upon approval by the U.S. Bankruptcy Court for the Northern District of Illinois (the 'Bankruptcy Court"), the Funding Parties shall immediately make $225,000 available to the Estates to fund the Initial Estate Advance (as defined below) and for a $75,000 retainer for the Forensic Accountant (as defined below). Upon receipt of monthly invoices from the Forensic Accountant and request by the Trustee, the Funding Parties shall make subsequent advances to the Estates in the percentages set forth herein, for the limited purpose of reimbursing the Estates for the reasonable fees and expenses of the Forensic Accountant until the Initial Funding Commitment is advanced by the Funding Parties in full.  None of the Funding Parties undertake any obligation to advance funds to the Estates beyond the Initial Funding Commitment (a "Subsequent Funding") and each of the Funding Parties expressly reserve all of their rights to refuse Subsequent Funding in each of their sole discretions, or to refuse to fund beyond any Subsequent Funding if any is made. |

**Use of Funds**

The Initial Funding Commitment shall be used by the Estate as follows:

- $350,000 to Kroll, Inc. ("Kroll" or the "Forensic Accountant") for a forensic accounting and fraud examination of the Debtors, their principals and related entities, as further detailed herein;

- $125,000 to Ron Peterson, as trustee (the "Trustee"), for general legal fees and expenses incurred in connection with administration of the Estates (the "Trustee Advance"); and

- $25,000 for chapter 7 administrative costs to be paid by the Trustee in his sole discretion (the "Expense Advance" and, together with the Trustee Advance, the "Initial Estate Advance").

**Reimbursement Obligation**

Any amounts advanced to the Estates by the Funding Parties pursuant to the Initial Funding Commitment or a Subsequent Funding (or otherwise) shall be entitled to an allowed super priority claim pursuant to section 364(c)(1) over all other chapter 7 or chapter 11 claims of these Estates pursuant to section 726(a)(1) and 507(a)(1) of the Bankruptcy Code (the "Funding Claim"), which shall be reimbursed by the Estates as set forth in this Proposal. The Funding Claim shall accrue interest at 7% per annum and also include the reasonable fees and expenses of SBC, BST and VZ incurred in connection with implementing the Funding Commitment set forth herein and working with the Trustee to administer these Estates on a going forward basis, plus those fees and expenses incurred by SBC and BST in connection with the substantial contribution made by such parties in these cases with respect to obtaining the appointment of the Trustee and working with the Trustee in connection with selecting the Forensic Accountant. Both Estates shall be jointly and severally liable for the Funding Claim. The

2

Initial Funding Claim shall have priority over any Subsequent Funding, and each Subsequent Funding shall have priority over any Subsequent Funding.

**Funding Claim Reimbursement**

Without limitation to the Funding Parties' rights to compel repayment of their super priority claim set forth above, irrespective of any other provision of this Agreement, the Funding Claim shall be reimbursed by the Trustee to the Funding Parties as follows:

- $100,000 upon the Trustee collecting the first $200,000 in gross funds;

- $100,000 upon the Trustee collecting the next $200,000 in gross funds;

- $100,000 upon the Trustee collecting the next $150,000 in gross funds;

- $100,000 upon the Trustee collecting the next $150,000 in gross funds; and

- the balance of the Funding Claim paid in $50,000 increments as such additional $50,000 increments of gross collections are collected by the Trustee.

The Trustee shall provide the Funding Parties periodical accountings of all collections by the Trustee and all assets of the Estates.

**Forensic Accountant**

Kroll shall be directed to perform (or substantially perform) within 60 days hereof the following:

- secure and analyze Debtors' books and records, including securing and imaging the Debtors' 22 servers and those personal computers which were running Windows XP, and securing all paper records with the Debtor or its

3

professionals;

- provide an analysis of how from a corporate formality standpoint the Debtors, their principals and their related entities (a) operated and interacted with each other, and (b) the extent to which they commingled, hid or diverted assets or revenues;

- determine the existence and validity of the Debtors' accounts receivables and cash accounts;

- determine the existence of avoidance actions and the financial viability of the transferees;

- discover missing assets or assets being concealed; and

- provide a report on how this "bustout" scam worked, how funds flowed and the role of the key participants.

Kroll shall meet with the Trustee and representatives of the Funding Parties on either a weekly or bi-weekly basis (initially on a weekly basis) to discuss the status of their investigation and their progress with respect to each of the action items detailed above.

**Alter Ego/Fraud Claims**

The Funding Parties shall be authorized by the Trustee pursuant to an agreed order to pursue any alter ego or related claims against the Debtors' principals or related companies (the "Alter Ego Claims"), including those claims currently pending by SBC's affiliate, Southwestern Bell Telephone L.P., in the United States District Court for the Southern District of Texas. The Funding Parties agree to share with the Estates 10% of any net recoveries (after payment of costs and expenses) by the Funding Parties on the Alter Ego Claims with such funds being distributed to creditors pursuant to section 726 of the Bankruptcy Code. The Trustee agrees that this 10% share is the only amount that the Estate is

4

entitled to receive from any net proceeds recovered in those Alter Ego Claims which are being pursued by the Funding Parties as set forth above. The Trustee and any other parties are free to pursue other alter ego claims against the Debtors or their principals within their sole and exclusive discretion and nothing herein shall be deemed to otherwise limit the pursuit of such claims. Upon request of the Funding Parties, the Trustee shall join as a plaintiff in any Alter Ego Claims regardless of whether such claims are currently pending or are to be asserted in the future.

**Avoidance Actions**

The Trustee shall retain as its special litigation counsel pursuant to section 327(e) of the Bankruptcy Code the firm or firms recommended by the Funding Parties and which is otherwise reasonably satisfactory to the Trustee to pursue specified avoidance actions, unless the Trustee and the Funding Parties agree that such actions should be pursued on a contingency basis due to the size and ultimate collectibility of such claims.

**Release of Claims**

The Trustee expressly waives any and all Known Claims (as defined herein) it may have on its own behalf or on behalf of the Estates against the Funding Parties or their affiliates (the "Releasees"). "Known Claims" shall include, without limitation, any and all claims at law, in equity or otherwise which have been asserted or threatened against the Releasees by the Debtors or their representatives (and any claims related to such claims), together with any other claims in law, in equity or otherwise which have been investigated by the Trustee as of the date hereof; such asserted, threatened or investigated claims having included, without limitation, claims for or related to overbilling, billing disputes, refunds, charges, charge backs, credits, reciprocal compensation, interstate and intrastate access fees, call origination and termination fees, form of billings, billing practices, billing errors, setoffs, offsets, tariffs, interconnection agreements,

5

provision or non-provision of service, breach of contract, anticompetitive business practices, tortious interference with business relationships, and under Chapter 5 of the U.S. Bankruptcy Code (including, but not limited to, preference claims).

**Common Issues Agreement**

The Trustee shall enter into a common interest agreement with the Funding Parties for the purpose of, including but not limited to, sharing the Estates' books and records and any information obtained or otherwise generated by Kroll in connection with the forensic examination with the Funding Parties, plus waive any applicable privileges to enable the Funding Parties to take discovery of the Debtors' professionals.

**Governing Law**

This Estate Funding Agreement shall be governed by the laws of the State of Illinois or federal bankruptcy law, as applicable.

**Bankruptcy Court Approval**

This Estate Funding Agreement shall remain subject to approval by the Bankruptcy Court. To the extent of an inconsistency between any order approving this Estate Funding Agreement, the terms of this agreement shall control.

**AGREED AND ACCEPTED:**

SBC TELECOMMUNICATIONS, INC., AS
AGENT FOR SOUTHWESTERN BELL
TELEPHONE, L.P., D/B/A SBC ARKANSAS,
SBC KANSAS, SBC MISSOURI, SBC
OKLAHOMA AND/OR SBC TEXAS;
ILLINOIS BELL TELEPHONE COMPANY
D/B/A SBC ILLINOIS; INDIANA BELL
TELEPHONE COMPANY, INC. D/B/A SBC
INDIANA; MICHIGAN BELL TELEPHONE
COMPANY D/B/A SBC MICHIGAN, THE
OHIO BELL TELEPHONE COMPANY D/B/A
SBC OHIO; WISCONSIN BELL, INC. D/B/A
SBC WISCONSIN; AND PACIFIC BELL
TELEPHONE COMPANY D/B/A SBC
CALIFORNIA.


By: _____
Title: _____


**BELLSOUTH TELECOMMUNICATIONS,
INC.**


By: _____
Title: _____


**THE OPERATING TELEPHONE COMPANY
SUBSIDIARIES OF VERIZON
COMMUNICATIONS INC.**

By: _Henry S Hexam Baber_____
Title: _Vice President - Wholesale Finance_

MAY 11 2004 08:50 FR SWC LEGAL DEPT.    214 464 1138 TO 6#3127068226    P.02

**AGREED AND ACCEPTED:**

SBC TELECOMMUNICATIONS, INC., AS AGENT FOR SOUTHWESTERN BELL TELEPHONE, L.P., D/B/A SBC ARKANSAS, SBC KANSAS, SBC MISSOURI, SBC OKLAHOMA AND/OR SBC TEXAS; ILLINOIS BELL TELEPHONE COMPANY D/B/A SBC ILLINOIS; INDIANA BELL TELEPHONE COMPANY, INC. D/B/A SBC INDIANA; MICHIGAN BELL TELEPHONE COMPANY D/B/A SBC MICHIGAN, THE OHIO BELL TELEPHONE COMPANY D/B/A SBC OHIO; WISCONSIN BELL, INC. D/B/A SBC WISCONSIN; AND PACIFIC BELL TELEPHONE COMPANY D/B/A SBC CALIFORNIA.

By: _Joseph D. Tison_
Title: V.P. - Finance

**BELLSOUTH TELECOMMUNICATIONS, INC.**

By: _____
Title: _____

**THE OPERATING TELEPHONE COMPANY SUBSIDIARIES OF VERIZON COMMUNICATIONS INC.**

By: _____
Title: _____

7

** TOTAL PAGE.02 **

**ESTATES OF EZ TALK
COMMUNICATIONS, LLC and DELTA
PHONES, INC.**

By: _Ron Peterson_

Title:   As Trustee for the bankruptcy estate of
Delta Phones, Inc. and EZ Talk
Communications, LLC.

8

05/12/2004 14:41 FAX                                                    @002

**AGREED AND ACCEPTED:**

SBC TELECOMMUNICATIONS, INC., AS
AGENT FOR SOUTHWESTERN BELL
TELEPHONE, L.P., D/B/A SBC ARKANSAS,
SBC KANSAS, SBC MISSOURI, SBC
OKLAHOMA AND/OR SBC TEXAS;
ILLINOIS BELL TELEPHONE COMPANY
D/B/A SBC ILLINOIS; INDIANA BELL
TELEPHONE COMPANY, INC. D/B/A SBC
INDIANA; MICHIGAN BELL TELEPHONE
COMPANY D/B/A SBC MICHIGAN, THE
OHIO BELL TELEPHONE COMPANY D/B/A
SBC OHIO; WISCONSIN BELL, INC. D/B/A
SBC WISCONSIN; AND PACIFIC BELL
TELEPHONE COMPANY D/B/A SBC
CALIFORNIA.

By: _____
Title: _____


BELLSOUTH TELECOMMUNICATIONS,
INC.

By: _____
Title: _____ Its Attorney _____


THE OPERATING TELEPHONE COMPANY
SUBSIDIARIES OF VERIZON
COMMUNICATIONS INC.

By: _____
Title: _____

7

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) |  |
| **Delta Phones, Inc.,** *et al.*, | ) | No. 04 B 00823 |
|  | ) | (Jointly Administered) |
| Debtor. | ) |  |
|  | ) | The Honorable John H. Squires, presiding |

At Chicago, Illinois
May 6, 2004

## ORDER PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014(a), 2016 AND 5002, AUTHORIZING TRUSTEE TO EMPLOY AND RETAIN KROLL INC. AS CONSULTING EXPERTS

Upon consideration of the application (the "Application") of the Chapter 7 trustee in the above-captioned cases (the "Trustee") for entry of an order authorizing the Trustee to employ and retain Kroll Inc. ("Kroll") as consulting experts pursuant to the terms of that certain letter agreement (the "Letter Agreement") and upon the affidavit of Thomas Sterner (the "Affidavit"); the Court being satisfied, based on the representations made in the Application and the Affidavit, that Kroll represents no interest adverse to Debtors' estates with respect to the matters upon which they are to be engaged, that Kroll is a "disinterested person" as that term is defined under section 104(14) of title 11 of the United States Code and that the employment of Kroll is necessary and would be in the best interests of the Debtors' estates and the Debtors' creditors; the Court finding that notice given is proper; the Court having jurisdiction over this core proceeding; and the Court being fully advised in the premises and after due deliberation and sufficient cause appearing therefor:

IT IS HEREBY ORDERED that the Application is granted.



EXHIBIT

B

IT IS FURTHER ORDERED that the Trustee is authorized to employ and retain Kroll as consulting experts in the areas of investigations, computer science, and forensic accounting on the terms set forth in the Application, effective as of February 26, 2004.

IT IS FURTHER ORDERED that the terms of the Letter Agreement, including, without limitation, the fee provisions and the indemnification provisions are reasonable terms and conditions of employment and are approved pursuant to 11 U.S.C. § 328(a); provided, however, that Kroll, as the indemnified party, shall be entitled to indemnification for all claims, damages and costs only if directors of the Debtors may be indemnified under the laws of the State of Illinois for such claims, damages or costs found by a court of competent jurisdiction to have resulted primarily from such director's ordinary negligence.

IT IS FURTHER ORDERED that Kroll shall be compensated in accordance with the terms as set forth in the Application, subject to the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, and orders of this Court.

5/6/4

MAY - 6

UNITED STATES BANKRUPTCY JUDGE

#107203

2

# Kroll

30 North La Salle Street
Suite 3220
Chicago, IL 60602
tel: 312 739 0220
fax: 312 739 0810

www.krollworldwide.com

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY-CLIENT COMMUNICATION**
**ATTORNEY WORK PRODUCT**

June 29, 2004

Matter No.      0004623-0038
Invoice No.           608145

Mr. Ronald R. Peterson
c/o Jenner & Block
Trustee, In Re:  Delta Phones, Inc.
and In Re:  EZ Talk Comm., Inc.
One IBM Plaza
Chicago, IL  60611

**From March 17, 2004 through June 25, 2004**

Re:    Delta Phones, Inc./EZ Talk Communications, LLC

For Professional Services Rendered

| | | | |
|---|---|---:|---:|
| M. Pace | 15.90 hrs @ $425.00 per hour | $ 6,757.50 | |
| M. Fellner | 156.90 hrs @ $375.00 per hour | 58,837.50 | |
| A. Alvizu | 178.90 hrs @ $295.00 per hour | 52,775.50 | |
| T. Sterner | 100.60 hrs @ $295.00 per hour | 29,677.00 | |
| B. Friedman | 77.50 hrs @ $275.00 per hour | 21,312.50 | |
| L. Butterfield | .80 hrs @ $245.00 per hour | 196.00 | |
| D. Walker | 161.00 hrs @ $225.00 per hour | 36,225.00 | |
| D. Copp | 208.10 hrs @ $225.00 per hour | 46,822.50 | |
| M. McDonald | .50 hrs @ $220.00 per hour | 110.00 | |
| M. Towers | 1.50 hrs @ $220.00 per hour | 330.00 | |
| D. Wetherell | 2.00 hrs @ $200.00 per hour | 400.00 | |
| P. Donato | 152.60 hrs @ $130.00 per hour | 19,838.00 | |
| T. Horn | 2.00 hrs @ $110.00 per hour | 220.00 | |
| P. Martin | 168.70 hrs @ $ 50.00 per hour | 8,435.00 | |
| Ontrack | 68.00 hrs @ $275.00 per hour | 18,700.00 | |
| | **Total Professional Fees** | | **$300,636.50** |

Out-of-Pocket Disbursements

| | | |
|---|---:|---:|
| T&E – Ground Transportation | $9,742.47 | |
| Forensic Analysis of Hard Drives | 6,650.00 | |
| Database Charges | 3,616.44 | |
| T&E – Hotel Charges | 4,043.99 | |
| T&E – Meals | 2,539.20 | |
| T&E – Air Transportation | 3,202.34 | |
| Ontrack Equipment Supplies | 2,165.11 | |
| Public Records Expense | 2,958.60 | |
| Postage & Courier | 603.24 | |
| T&E – Mileage Reimbursement | 327.32 | |
| Storage Materials | 294.97 | |
| Telephone & Fax | 19.90 | |
| **Total Out of Pocket Disbursements** | | **36,163.58** |



EXHIBIT
C

*(Continued On Page 2)*

**PRIVILEGED AND CONFIDENTIAL**

Mr. Ronald R. Peterson
June 29, 2004
Page 2 of 2

**Kroll**

| | |
|---|---|
| **Total Fees and Out of Pocket Disbursements** | **$336,800.08** |
| Administrative Cost Allocation *(Reduced from 7% to 4% of Professional Fees)* | 12,025.46 |
| **Total Invoice** | **$348,825.54** |
| *Less Retainer Previously Paid* | (75,000.00) |
| **Total Due** | **$273,825.54** |

Please wire funds to the following account:
  JP Morgan Chase Bank
  380 Madison Avenue
  New York, NY 10017
  In the name of Kroll Associates, Inc.
  Account #006124461
  ABA #021000021

or remit payment to:
  Kroll Associates Inc.
  Accounting Department – 7th Floor
  900 Third Avenue
  New York, NY 10022-4751

*- TERMS NET 30 DAYS -*



PRIVILEGED AND CONFIDENTIAL
June 29, 2004

### DETAIL FEE BREAKDOWN

| Date | Init | Description | Hours | Amount |
|---|---|---|---|---|
| 03/17/04 | MLF | Strategy and planning meeting w/Pace and others; client meeting at Jenner w/Peterson and Hammer; debriefing on recent developments, results of interviews; plan and strategize investigation; Review EZ Talk and Delta Phone documents stored at Jenner for investigative leads; Review bank account and accounting records, and other material needed for investigation;  report information about new P.O. box found in mail;  obtain and begin review of background material and litigation filings; Review Mintz deposition, bankruptcy filings and other material; prepare draft internal briefing memorandum; attempt to reach witnesses. | 9.80 | $ 3,675.00 |
| 03/17/04 | MRP | Strategized and reviewed initial overview w/ Kroll team; prepared for meeting w/ client; strategized and developed initial investigative and forensic accounting initiatives w/ R. Peterson, A. Hammer, and Kroll team (M. Fellner, A. Alvizu, D. Copp); strategized and reviewed work plan steps w/ Kroll team. | 4.30 | 1,827.50 |
| 03/17/04 | ALA | Strategized and developed investigative and forensic accounting initiatives to initiate the project; met with trustee and SBC counsel to present initial investigative and forensic accounting initiatives; reviewed DPI and EZT records seized from Naperville to assess relevance. | 6.00 | 1,770.00 |
| 03/17/04 | BDF | Conf. with Pace, Alvizu, Fellner and Copp regarding strategy and computer forensic investigative plan. | 1.00 | 275.00 |
| 03/17/04 | DC | Initial strategy meeting with Kroll team and Trustee; Analysis of debtor's documents at Jenner. | 5.50 | 1,237.50 |
| 03/18/04 | MLF | Telephone interview with witness; arrange in-person interview; Continue review of background materials, including depositions and background research on subjects of investigation; add to internal memorandum; t/cs w/Alvizu regarding developments at office in Naperville and new information on subjects' backgrounds; Research subjects' prior bankruptcies; email to Trustee about new P.O. Box found; review bank account list; plan and strategize investigation | 4.80 | 1,800.00 |

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| | | | | |
|---|---|---|---|---|
| 03/18/04 | ALA | Reviewed DPI and EZT records on-site in Naperville to identify/triage relevant documents for our analyses. | 6.00 | 1,770.00 |
| 03/18/04 | DC | At Debtors' offices at 1245 Diehl Road in Naperville; Analyze and organize site documents; Review 2003 Bank files to identify additional account numbers; Review selected files for R. Tolan information; Prepare communication to Karen Berg about account numbers; Structure reporting format for staff. | 10.00 | 2,250.00 |
| 03/18/04 | MRP | Strategized and developed plan for electronic evidence and review of hard drives; strategized w/ M. Fellner re: case; reviewed interim findings of on-site work w/ A. Alvizu and D. Copp. | 1.80 | 765.00 |
| 03/19/04 | MLF | Phone interview with witness, former accounting person at Delta Phones. Continue to review background materials, including Tolan deposition; plan strategy and investigation with Copp, Pace and Friedman. | 2.50 | 937.50 |
| 03/19/04 | DC | Brief Paul Donato on case; Update strategy w/M. Fellner; Update logistic and staffing w/T. Alvizu; Brief legal assistant; Sort, review and analyze files delivered from Jenner; continue review and analysis of on-site records. | 6.90 | 1,552.50 |
| 03/20/04 | MLF | Continue to review and analyze files from bankrupt estates; Continue review of bankruptcy pleadings, especially deposition transcripts and testimony of Mintz and Tolan; Review Jenner preliminary research provided by Karin Berg; prepare internal draft briefing memorandum. Prepare internal memorandum outlining goals and strategy for electronic evidence recovery; Review with Friedman. | 4.50 | 1,687.50 |
| 03/21/04 | MLF | Continue review and analyze bankruptcy pleadings; Research background of various CLECs; plan and strategize investigation; Review list of bank accounts held by Delta and EZ Talk. | 1.60 | 600.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| 03/22/04 | MLF | Review background information developed to-date on subjects and other key players; plan for the background investigations.   Prepare for interviews former employees; Conduct drive-by of residence. Review files at Diehl Road office; review files in Lynn Kurtyak's office; Interview witnesses until 8:45 pm. w/Dan Copp; (Return to Chicago/travel time not billed.) | 10.50 | 3,937.50 |
| 03/22/04 | DC | Review electronic files stored on Quick Books; Continue Review, Inventory and Segregation of documents on-site at debtor's offices; Interview witnesses w/Fellner. | 11.00 | 2,475.00 |
| 03/22/04 | DW | Review pleadings, depositions and database completed to date to prepare strategy for research. Develop list of players and research strategy for background and asset searches. | 9.00 | 2,025.00 |
| 03/22/04 | PQD | Review and analyze accounting records, bankruptcy filings, internal memo and Scope of accounting review. Inventory, review and sort documents at Debtor's offices at 1245 Diehl Road. | 13.50 | 1,755.00 |
| 03/23/04 | MRP | Strategized w/ M. Fellner; same w/ B. Friedman; same w/ R. Peterson; same w/ A. Hammer. | 1.50 | 637.50 |
| 03/23/04 | TJS | Review pleadings in BellSouth and SBC cases to prepare investigative plan, including interviews and areas to focus additional investigative work. | 3.00 | 885.00 |
| 03/23/04 | DC | Continue analysis, review, inventory and segregation of documents at debtor's office in Naperville. | 9.00 | 2,025.00 |
| 03/23/04 | ALA | Read and analyze DPI and EZT transcripts of proceedings from February 12, 2004; Strategized and developed investigative and forensic accounting initiatives. | 3.20 | 944.00 |
| 03/23/04 | DW | Conduct extensive database searches and analysis on subjects including litigation, press, corporate affiliations and other online sources. Conduct analysis of findings and develop internal memo of notes and key findings. Conf. with M.Fellner, B.Friedman and T.Sterner to develop strategy. Continue with database searches and analysis of key subjects and related parties. | 9.20 | 2,070.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| 03/23/04 | MLF | Review and analyze documents obtained from witnesses; Review and analyze documents found at Naperville office; Research other companies acquired by subjects; Research silent partner. Conf w/Kroll team members to review new information, plan strategy and investigation; Prepare and conduct telephonic briefing of Ron Peterson regarding interviews of witnesses; T/cs and emails with Karin Berg re: subpoenas, bank accounts, P.O. Boxes, and other leads. Review electronic evidence strategy and potential interviews of debtor IT personnel with Friedman. Review results of interviews with IT staff. | 8.50 | 3,187.50 |
| --- | --- | --- | --- | --- |
| 03/23/04 | PQD | Continue conf. review, inventory and segregation of documents at M&T Corporation 1245 Diehl Road. | 8.50 | 1,105.00 |
| 03/24/04 | MLF | Conferences w/Walker and Sterner to review results to date of background searches on subjects of investigation; plan strategy for investigation of other subjects and companies. Review and revise subpoena lists for Trustee; Research and send bank account data to Trustee; Review updated bank account chart; Review and analyze financial reports provided by witness; compare to previous known data and conf calls w/Alvizu and Copp re: same; Continue to review and analyze documents from witnesses and conduct follow-up investigation. T/cs w/Friedman re: progress and status of computer dismantling and analysis. | 8.40 | 3,150.00 |
| 03/24/04 | DC | Continue review and analysis, inventory and segregation of documents at Naperville offices of debtor.  Brief Fellner on results to date. | 10.00 | 2,250.00 |
| 03/24/04 | ALA | Conf. with M. Fellner to strategize about week's initiatives. | 0.50 | 147.50 |
| 03/24/04 | BDF | Worked on-site at Diehl Road offices with Kroll Ontrack engineers. Secured and documented all digital media.  Conducted on-site interview and walk-through with former IT professional for M&T Capital.  Conducted telephonic interview with another former IT professional for M&T Capital. | 8.00 | 2,200.00 |
| 03/24/04 | DW | Conduct corporate research on companies associated with subjects. Research sale of several CLECs. Develop leads and findings. Discuss findings with M. Fellner. | 7.80 | 1,755.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| | | | | |
|---|---|---|---|---|
| 03/24/04 | PQD | Continue review and analysis of accounting records and other documents at Naperville offices. Inventory and segregate documents. | 9.70 | 1,261.00 |
| 03/24/04 | TJS | Review documents provided by former Delta/EZ employees. | 3.60 | 1,062.00 |
| 03/24/04 | Ontrack GH | Traveled to Chicago, Initiated work documenting chain of custody for 300+ items of digital media and hardware. The work consisted of (a) physically removing 22 plus servers from mounted racks and removing individual hard drives from network servers and personal computers; (b) photographing each piece of media; and (c) documenting chain of custody by completing appropriate records, which included serial numbers and other uniquely relevant identifying characteristics of the media. | 10.00 | 2,750.00 |
| 03/24/04 | Ontrack BR | Traveled to Chicago, Initiated work documenting chain of custody for 300+ items of digital media and hardware. The work consisted of (a) physically removing 22 plus servers from mounted racks and removing individual hard drives from network servers and personal computers; (b) photographing each piece of media; and (c) documenting chain of custody by completing appropriate records, which included serial numbers and other uniquely relevant identifying characteristics of the media. | 10.00 | 2,750.00 |
| 03/25/04 | MLF | Review and revise memo to clients regarding interim report on computer issues and initial findings; forward memo to client; Review of documents from client found in paralegal's office, including Brown/EZ Talk litigation; Mintz deposition; Review new information and results of background investigations to date. | 4.60 | 1,725.00 |
| 03/25/04 | DC | Review accounting records and other documents in Naperville in preparation for further forensic review. Inventory and segregation of documents at Naperville offices. | 11.00 | 2,475.00 |
| 03/25/04 | BDF | Drafted summary memorandum outlining work to date regarding electronic evidence. | 4.00 | 1,100.00 |
| 03/25/04 | DW | Conduct research regarding Florida based CLECs. Analyze public filings. Prepare detailed strategy memo for primary and secondary subjects including strategy for public records searches. | 6.80 | 1,530.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| 03/25/04 | PQD | Continue review, inventory and segregation of accounting and other records at debtor's offices at 1245 Diehl Road. | 8.20 | 1,066.00 |
|---|---|---|---|---|
| 03/25/04 | TJS | Review and analyze documents provided by former Delta/EZ employees. Follow-up on leads regarding Mintz's activity regarding Tallgrass; prepare preliminary interview list, including developing profiles on subjects in preparation for interviews; review records to identify companies related to debtors. Research companies used by debtors for acquisitions. Conduct research re: witness for telephone interview; attempt interview; attempt to interview former Delta employee in LA. | 6.00 | 1,770.00 |
| 03/25/04 | Ontrack GH | Continued work documenting chain of custody for 300+ items of digital media and hardware. The work consisted of (a) physically removing 22 plus servers from mounted racks and removing individual hard drives from network servers and individual personal computers; (b) photographing each piece of media; and (c) documenting chain of custody by completing appropriate records, which included serial numbers and other uniquely relevant identifying characteristics of the media. | 12.00 | 3,300.00 |
| 03/25/04 | Ontrack BR | Continued work documenting chain of custody for 300+ items of digital media and hardware. The work consisted of (a) physically removing 22 plus servers from mounted racks and removing individual hard drives from network servers and individual personal computers; (b) photographing each piece of media; and (c) documenting chain of custody by completing appropriate records, which included serial numbers and other uniquely relevant identifying characteristics of the media. | 12.00 | 3,300.00 |
| 03/26/04 | DW | Obtain bankruptcies from Federal Archives. Review bankruptcies. Conduct additional corp. database searches and analysis. Order corporate filings to determine origins of companies to purchase additional CLECs. | 5.10 | 1,147.50 |
| 03/26/04 | DC | Status and strategy conference call; Review of accounting documents; provide preliminary analysis of accounts. | 7.00 | 1,575.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 03/26/04 | PQD | Review, analyze and inventory documents provided by accounting personnel interviewed. Catalogue boxes brought from 1245 Diehl Rd to Kroll office. Conference call to report progress made and discuss plan moving forward. | 5.50 | 715.00 |
| 03/26/04 | TJS | Tel conf w/client to report findings to date; prepare and review documents to prepare for call; review and analyze documents from M&T legal assistant's office; interview witness; tel conf w/former employee and analyze documents from Tolan bankruptcies. | 9.50 | 2,802.50 |
| 03/26/04 | MLF | Conf w/Kroll team to review results of investigation to date; Conf. call w/Peterson, Berg, Hammer, and creditors; Report results of investigation, computer analysis, and forensic review of books to date; discuss strategy and next steps; (Conf call from 9:30 - 11:30); email Anderson at SBC; Review and analyze financial data from Bell South; Review work to date and prepare memo/email to client regarding status of investigation; Conf. w/Kroll team to plan strategy for coming week, interviews, computer issues and accounting review; Respond to Berg emails re: subpoenas, computers and other requests. | 5.50 | 2,062.50 |
| 03/26/04 | MRP | Participate in update conference call w/client. | 1.00 | 425.00 |
| 03/26/04 | ALA | Conf. with D. Copp regarding analysis to date of DPI and EZT financials; Conf. with M. Fellner and team to prepare for client call; Participated in client call with bankruptcy trustee, creditors and Kroll. | 2.70 | 796.50 |
| 03/26/04 | BDF | On-site in Naperville with Kroll Ontrack engineers. Completed documenting chain of custody on 300 pieces of digital media at the 1245 Diehl Road, suite 300/307 office space. | 4.00 | 1,100.00 |
| 03/26/04 | Ontrack GH | Completed work documenting chain of custody for 300+ items of digital media and hardware. The work consisted of (a) physically removing 22 plus servers from mounted racks and removing individual hard drives from network servers and individual personal computers; (b) photographing each piece of media; and (c) documenting chain of custody by completing appropriate records, which include serial numbers and other uniquely relevant identifying characteristics of the media. | 8.00 | 2,200.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 03/26/04 | Ontrack BR | Completed work documenting chain of custody for 300+ items of digital media and hardware. The work consisted of (a) physically removing 22 plus servers from mounted racks and removing individual hard drives from network servers and individual personal computers; (b) photographing each piece of media; and (c) documenting chain of custody by completing appropriate records, which include serial numbers and other uniquely relevant identifying characteristics of the media. | 8.00 | 2,200.00 |
| 03/29/04 | DC | Detailed review of Quick Book accounting records for Delta Phones/EZ Talk. | 10.00 | 2,250.00 |
| 03/29/04 | TJS | Tel conf w/K Berg re: affidavit for bankruptcy filing; review list of creditors; review documents in preparation for interview of former employee; analyze same; prepare interview questions. Interview former employee. | 8.00 | 2,360.00 |
| 03/29/04 | BDF | Worked with Kroll Ontrack regarding digital media preservation and analysis from Delta Phones and EZ Talk. Analyzed the file indices for the back-up accounting server. | 7.50 | 2,062.50 |
| 03/29/04 | DW | Conduct public records research for primary and secondary subjects. Index cases. Review available cases and order archived matters. | 8.10 | 1,822.50 |
| 03/29/04 | PQD | Analyze Bank Account information obtained from debtor's offices. Analysis of February 2004 Account information found on Delta Phones, M&T Capital, EZ Talk, and Big Phone; Travel Chicago to New York; | 10.50 | 1,365.00 |
| 03/30/04 | ALA | Confs. with T. Sterner, D. Copp, D. Walker, B. Friedman and M. Fellner, review recent investigative and forensic accounting results, plan and strategize initiatives for the week; Reviewed materials provided by former EZT accounting staff; Prepared for interviews with former DPI and EZT employees. | 5.00 | 1,475.00 |
| 03/30/04 | DC | Continued detailed review of accounting documents for debtor companies; Meeting to update interviews and research; Prepare draft historical financial statements for DPI and EZT. | 11.00 | 2,475.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| | | | | |
|---|---|---|---|---|
| 03/30/04 | BDF | Worked with Kroll Ontrack regarding digital media preservation and analysis from Delta Phones and EZ Talk.  Analyzed the file indices for the back-up accounting server. Contacted Verio regarding preserving data for MTcapitalgroup.com domain. Meeting with Fellner and other investigators regarding status and strategy.  Worked with Intuit to determine compatibility between Quickbooks and Quickbooks Enterprise Solutions. | 8.00 | 2,200.00 |
| 03/30/04 | DW | Obtain criminal cases and review. Review litigation gathered to date and draft summaries on cases. Continue on-site public records research including obtaining additional cases to review. Strategy meeting w/ M.Fellner, T.Sterner and B.Friedman. Database searches for debtor principals including civil and criminal. | 9.60 | 2,160.00 |
| 03/30/04 | PQD | Provide Kroll team, accounting information for interviews and investigation; Analyze bank statements for EZ Talk, Delta Phones; Analysis of Snapshots of Frema, M&T Capital and Big Phone accounts. | 10.40 | 1,352.00 |
| 03/30/04 | TJS | Draft summary of interview with former employee; discuss interview strategy w/Fellner and Alvizu; locate and send documents to K. Berg re: Diehl Ave lease;  tel conf w/K. Berg re: confidentiality issue; email former employee re: follow-up issues; continue review and analysis of documents for additional leads and interview preparation. | 7.00 | 2,065.00 |
| 03/30/04 | MLF | Respond to e-mail and document requests from client; teleconference with Kroll team to review status of new information regarding bankruptcy fraud and background of subjects and computer forensics plan and strategize next steps. Review results of public record searches on debtor principals etc. to date, including criminal cases; bankruptcies, and other issues | 2.80 | 1,050.00 |
| 03/31/04 | DC | Coordinate and oversee shipping of documents from Naperville to Kroll office; Update team on results of interviews and other new information. | 8.70 | 1,957.50 |
| 03/31/04 | DW | Conduct full public record searches and analysis for primary and secondary subjects. Conduct full searches, obtain and review numerous civil and criminal matters for subjects. Conduct research in Recorder of Deeds including property, dbas and UCCs. Obtain relevant filings. | 9.00 | 2,025.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| Date | Init | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 03/31/04 | PQD | Analysis of Bank statements for EZ Talk, Delta Phones; Analysis of Snapshots of Frema, M&T Capital and Big Phone accounts; Transfer analysis. Analysis of accounting documents found on the accounting servers; Catalog and segregate documents received from 1245 Diehl Rd. | 8.60 | 1,118.00 |
| 03/31/04 | TJS | Begin draft briefing summary for Friday conf call; review and analyze material sent by interviewee; conf w/Alvizu re: interview strategy following interview w/former employee; tel conf w/former employee re: potential interview. | 5.50 | 1,622.50 |
| 03/31/04 | ALA | Read case materials, discuss interview approach with D. Copp to prepare for interviews; interview same w/Dan Copp; Prepared memo of interview; provided summary of interview findings to T. Sterner and M. Fellner. | 9.00 | 2,655.00 |
| 03/31/04 | BDF | Worked with Kroll Ontrack to produce and analyze documents from Delta Phones/EZ-Talk accounting servers. Worked on resolving technical issues regarding QuickBooks and BusinessWorks proprietary software. Provided accountants and investigators with relevant documents for further analysis. | 8.00 | 2,200.00 |
| 04/01/04 | DC | Assemble and analyze historical financial statements for Delta Phones and EZ Talk Communications. | 4.00 | 900.00 |
| 04/01/04 | DW | Conduct full public records research for primary and secondary subjects. Search and review files in civil, criminal and recorder of deeds. Review cases and develop email highlighting criminal issues for case managers. | 8.00 | 1,800.00 |
| 04/01/04 | PQD | Prepared flow chart analysis of all cash flow between known and suspected Debtor affiliates, including but not limited to EZ Talk, Delta Phones, M&T Capital, and others; Began preparation for client conference call on Friday. | 8.60 | 1,118.00 |
| 04/01/04 | TJS | Interview former employee w/T. Alvizu; teleconference w/K. Berg re: affidavit for bankruptcy filing; make changes to same and supplement w/exhibits; attempt to find and interview subjects regarding debtors; write-up findings of interviews. | 6.00 | 1,770.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| 04/01/04 | ALA | Analyzed cash collections information and prepared a spreadsheet comparing data to EZT revenue numbers; Met with P. Donato to discuss and strategize about analyzing cash flow/transfers; Spoke with subject regarding billing services provided to DPI; Prepared follow-up interview questions for former employee; analyzed background information obtained on key players; received status briefing from D. Copp on forensic accounting initiatives in preparation for client calls, and reviewed files contained on CDROM provided to Trustee by debtor. | 6.00 | 1,770.00 |
| 04/01/04 | BDF | Worked with Kroll Ontrack to harvest the Quickbooks and Business Works financial records from M&T servers. | 8.00 | 2,200.00 |
| 04/02/04 | MLF | Reviewed new information developed this week. T/c with Kroll team to review information and prepare for a client briefing. Telephone calls with Karin Berg at Jenner and Block regarding strategic issues and questioning of Fallean Mintz. Client briefing including Jenner & Block, SBC, Mayer Brown, BellSouth and others. Plan strategy for investigation for coming week. | 6.00 | 2,250.00 |
| 04/02/04 | DC | Review status of forensic accounting and prepare accounting material for conference call. | 2.00 | 450.00 |
| 04/02/04 | MRP | Strategized w/ M. Fellner re: case; reviewed correspondence re: investigative, forensic accounting, and computer forensics initiatives; strategized w/ Kroll team re: interim findings; strategized and reported interim findings to client team. | 2.30 | 977.50 |
| 04/02/04 | ALA | Reviewed notes and analyses and prepare client briefing; Attempt to telephonically contact subject; participated in an internal strategy meeting with M. Fellner, T. Sterner, B. Friedman, D. Walker, and P. Donato to summarize findings for client; T/c w/K. Berg with M. Fellner regarding issues for bankruptcy Trustee; participated in DPI/EZT conference call. | 7.00 | 2,065.00 |
| 04/02/04 | BDF | Worked with Kroll Ontrack to harvest the Quickbooks and Business Works financial records from M&T servers. | 8.00 | 2,200.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| Date | | Description | | |
|---|---|---|---|---|
| 04/02/04 | DW | Analysis of litigation and database findings. Summarize criminal and civil litigation. Strategy meeting with M.Fellner, T.Sterner and A.Alvizu to debrief on info gathered to date. | 7.60 | 1,710.00 |
| 04/02/04 | PQD | Analyze debtor documents and accounting records; Prepare Brief Binder to support cash flow analysis through the entities. Internal conference with Kroll team to review findings and prepare for conference call with the trustee. Prepare cash flow support and guidance analysis. | 5.80 | 754.00 |
| 04/02/04 | TJS | Review and analyze interviews and documents to prepare briefing conference call w/client; participate in conference call. | 5.00 | 1,475.00 |
| 04/03/04 | BDF | Continued to work with Kroll Ontrack to harvest the Quickbooks and Business Works financial records from M&T servers. | 8.00 | 2,200.00 |
| 04/05/04 | DC | Reconstruct EZT and DPI Financials. | 4.00 | 900.00 |
| 04/05/04 | ALA | Meet with Kroll team to strategize about week's initiatives; Compare results with DPI bankruptcy filings; Review bank subpoenas; Reviewed cash analyses. | 6.20 | 1,829.00 |
| 04/05/04 | DW | Database, research and other investigation regarding Debtor principals. Arrange statewide criminal search, and conduct additional criminal and civil litigation searches. Research corporate affiliations. Continue research. | 8.00 | 1,800.00 |
| 04/05/04 | PQD | Meeting to discuss strategy moving forward on Cash Analysis, Research, and Investigations; Cash Analysis of Bank Statements provided for E Z Talk and Delta Phones from October 2003 through December 2002. | 7.50 | 975.00 |
| 04/05/04 | TJS | Review and analyze documents, including agreements, draft agreements, letters of intent, guarantees, exhibits, corporate kit records, and email re: M&T purchase of Delta Phones to determine: current shareholders, status of shareholder, details re: financing; begin draft of file memo re: sale of Delta and history of shareholdings. | 5.00 | 1,475.00 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| 04/05/04 | MLF | Conferences at various times during day with team members re: status of investigation, client priorities, plan strategy and tactics, interviews, and accounting issues. Review Quick Books analysis; investigate preferential payments; review and investigate new information;  Review criminal and civil litigation results re: Debtor principals. | 4.50 | 1,687.50 |
|---|---|---|---|---|
| 04/06/04 | PM | Review of debtor accounting records for completeness and indications of material alterations made after the accounting staff was dismissed. | 6.50 | 325.00 |
| 04/06/04 | BDF | Worked with Alvizu and accountants on Quickbooks issues.  Interviewed former IT personnel.  Analyzed Quickbooks password issues with Kroll Ontrack. | 2.00 | 550.00 |
| 04/06/04 | DW | Conduct analysis and draft summaries of key findings on debtor principals including new info on tax liens and property ownership. Conduct additional database research tasks and research re: preference payment recipients. Begin conducting research and analysis on principals of company receiving payments. | 8.30 | 1,867.50 |
| 04/06/04 | PQD | Cash Analysis of Bank Statements provided for E Z Talk and Delta Phones form October 2003 through December 2002 | 9.90 | 1,287.00 |
| 04/06/04 | TJS | Review and analyze documents, including agreements, draft agreements, letters of intent, guarantees, exhibits, corporate kit records, and email re: M&T purchase of Delta Phones to determine: current shareholders, details re: financing. Continue draft of file memo re: sale of Delta and history of shareholdings. | 5.00 | 1,475.00 |
| 04/06/04 | MLF | Conf w/former accountant; review new information developed regarding alteration of books and records;  Review background data; Confs w/Friedman re: strategy and interviews w/former IT personnel about deleted files, accounting records; Conf w/Walker re: investigating alleged preferred payments. Review new information developed by forensic accountants; Meeting with team members to plan interview of Mintz. | 4.50 | 1,687.50 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| | | | | |
|---|---|---|---|---|
| 04/06/04 | ALA | Reviewed and analyzed DPI bankruptcy filing; Provided direction to forensic accountant, reviewed reports and discussed analyses; Participated in calls with K. Berg to DPI/EZT banks; Met with M. Fellner, T. Sterner and D. Copp to prepare for meeting with F. Mintz. | 7.00 | 2,065.00 |
| 04/06/04 | DC | Assemble historical financial statements for DPI and EZT. | 10.00 | 2,250.00 |
| 04/07/04 | MLF | Meeting at Jenner & Block w/Ron Peterson and Karin Berg re: planning for Mintz interview; Review documents and background material on various issues in preparation for Mintz interview; Conferences w/team members; Review background data on debtor principal; Review new information developed by accountants. | 6.50 | 2,437.50 |
| 04/07/04 | PM | Review debtor accounting records to determine beginning and ending of transaction records; created Excel spreadsheet of cash trails to insiders and related parties, and of any/all payments greater than $4,999. | 6.00 | 300.00 |
| 04/07/04 | ALA | Participated in a meeting with R. Peterson, K. Berg and M. Fellner to discuss approach for Mintz interview; strategized with K. Berg regarding bank subpoena; reviewed recovered files from DPI/EZT servers; Analyze DPI/EZT QuickBooks data and develop reports; developed interview questions and assembled documentation and case materials in anticipation of interview with Mintz; strategized internally with Kroll team to develop questions and approach for Mintz interview. | 8.30 | 2,448.50 |
| 04/07/04 | BDF | Worked with computer forensic technician to break a sample MT Capital Quickbooks file password. Tested results.  Prepared additional password protected files to have broken.  Prepared Delta Phones/EZ Talk Quickbooks files for review by Trustee and DIP meeting on 4/8. | 5.00 | 1,375.00 |
| 04/07/04 | DW | Conduct full public records searches on subjects. Review property documents and foreclosure matters and write up summary. Conduct background research including press, corporations and litigation. Prepare for public records research. | 9.70 | 2,182.50 |

**Kroll**

PRIVILEGED AND CONFIDENTIAL
June 29, 2004

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 04/07/04 | PQD | Continued Cash Analysis of Bank Statements provided for E Z Talk and Delta Phones form October 2003 through December 2002; Prepared Bank Account Inventory of Statements provided for Mintz interview, and lists of possible preferential payments per the bank statements provided. | 11.00 | 1,430.00 |
| 04/07/04 | TJS | Review documents obtained from legal offices at M&T; draft memo re: history of Delta Phones purchase and shareholding history; draft spreadsheet re: shareholdings; strategy meeting to prepare for interviews; review payment history on notes; review and analyze results of online research. | 8.00 | 2,360.00 |
| 04/07/04 | DC | Prepare updated historical financial statements for DPI and EZT. | 10.00 | 2,250.00 |
| 04/08/04 | PM | Review debtor accounting records, prepared reports on transactions of cash transfers to key names; find transaction history of all Notes Payables; Analyze prepared reports of all payments to vendors for the calendar year and 90 day look back; and prepared cash basis financials to determine real dollar amounts of cash flows. Began analysis of expense accounts for inappropriate or excessive payments. | 9.00 | 450.00 |
| 04/08/04 | BDF | Determined if QB files from 2-24-04 CD are most current QB files. Worked with Kroll Ontrack regarding hashing QBW and QBB files. Worked with engineer regarding breaking QB files passwords. Tested passwords. | 4.00 | 1,100.00 |
| 04/08/04 | DW | Review press on subject and additional background information on subject and Delta purchase. Interview w/subject. Conduct public records and Federal Courts. Begin review of litigation. | 12.00 | 2,700.00 |
| 04/08/04 | PQD | Analysis of First Capital E Z Talk accounts for August through October 2003. Analysis of All E Z Talk bank information provided and recovered from Diehl Road in a month by month reconciliation by account including a comparison of the disbursements to the Bankruptcy filing schedules. | 8.50 | 1,105.00 |
| 04/08/04 | TJS | Conduct interview; teleconference w/K. Berg re: bank subpoenas; serve subpoenas and meet w/bank officials; teleconference w/K. Berg re: results; conduct searches in bankruptcy court re: various related companies (4 hrs deducted for travel time). | 10.00 | 2,950.00 |

**Kroll**

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 04/08/04 | MLF | Continue to prepare questions and topics and review deposition transcripts, accounting records, other documents in preparation for Mintz interview. T/cs w/Karin Berg. T/c w/Verizon counsel – briefed on investigation to date; T/cs w/Kroll investigators regarding service of subpoenas to Banks, Review new information, preferential payments, and discuss strategy w/Kroll forensic accounting team. | 5.20 | 1,950.00 |
| 04/08/04 | ALA | Strategized with K. Berg regarding re-scheduling of Mintz interview; worked with accountant to develop customized QuickBooks reports from DPI and EZT financial data; reviewed DPI and EZT financials, QuickBooks reports, cash analysis and case materials in preparation for interview with F. Mintz; assembled documentation and prepared material for use during interview. | 6.20 | 1,829.00 |
| 04/08/04 | DC | Analyze and prepare historical financial statements for DPI, EZT, and related companies. | 10.00 | 2,250.00 |
| 04/09/04 | DC | Continue to assemble historical financial statements for DPI and EZT. | 8.00 | 1,800.00 |
| 04/09/04 | TJS | Interview of Delta Phones (2 hrs), and former operations staff at Delta (.5 hrs); prepare for same interviews; meeting w/Kroll team to discuss findings of interviews re: strategy going-forward. | 5.50 | 1,622.50 |
| 04/09/04 | MLF | At Jenner & Block; Interview Fallean Mintz w/Tony Alvizu; Karin Berg and Ron Peterson; Mike Davis present; At Kroll; Debrief Kroll team re: results of interview and strategy for follow-up. | 5.80 | 2,175.00 |
| 04/09/04 | ALA | Interview of F. Mintz with M. Fellner at Jenner & Block. | 5.50 | 1,622.50 |
| 04/09/04 | BDF | Conducted investigation of QuickBooks files to determine if 2-24-04 CD was generated from files pre-dating February 2004. Worked with Kroll Ontrack engineers to review A21 server file indices. | 2.00 | 550.00 |
| 04/09/04 | DW | Conduct research to determine if this is an alias. Include criminal, property, press and education verification. Review research on and summarize new information in notes. | 4.00 | 900.00 |

**Kroll**

| 04/12/04 | PM | Review debtor and related parties accounting records: M&T, Sourcecom, Footprint and FREMA. Analyzed files for all $$ transfers. Continued analysis of expense and cash accounts for inappropriate or excessive payments. | 8.50 | 425.00 |
|---|---|---|---|---|
| 04/12/04 | MLF | Interview officials, regarding Delta Phones/EZ Talk; Review results of interviews w/Alvizu and Sterner;  Review forensic accounting results to date w/Copp and Donato; Begin to prepare briefing. | 6.30 | 2,362.50 |
| 04/12/04 | ALA | Analyzed DPI QuickBooks data with accountant; spoke with and scheduled an interview; met with D. Copp and P. Donato to discuss/analyze DPI/EZT bank account activity and DPI preferential payments. | 4.00 | 1,180.00 |
| 04/12/04 | DW | Conduct extensive review of materials, database and public records and draft summary. Conduct additional online research on subject's companies and additional questions from M. Fellner. | 7.60 | 1,710.00 |
| 04/12/04 | PQD | Detailed analysis of Delta Phone Progressive Bank account data from end of 2002 and beginning of 2003. | 9.70 | 1,261.00 |
| 04/12/04 | TJS | Teleconference with former employee re: meeting; review and analyze documents to identify other possible interview candidates. | 4.00 | 1,180.00 |
| 04/12/04 | DC | Analyzed data and prepared Preferential Payments list. | 9.00 | 2,025.00 |
| 04/13/04 | ALA | Met with D. Copp and P. Donato to discuss DPI/EZT cash flow summaries and DPI preferential payments in anticipation for update call; participated in a meeting with Kroll team to prepare for update call; participated in update call; debriefed with Kroll team after update call; prepared documents and materials for interviews with former employees. | 6.50 | 1,917.50 |
| 04/13/04 | DC | Continue to prepare Preferential Payments list. Participated in status and strategy conference call. Prepare factual support for "alter ego" claim. | 10.00 | 2,250.00 |
| 04/13/04 | DW | Conduct research on various entities that received payments from Delta and EZ Talk. Continue adding findings to internal memo. Meet with M.Fellner to discuss research steps and strategy. | 7.60 | 1,710.00 |